UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TIMOTHY ROBERTSON,<br><br>Plaintiff,<br><br>v.<br><br>JASON SMILEY, JOHN SALYER, SILVERIO NAPULES, BARLOW,<br><br>Defendants. | CAUSE NO. 3:26-CV-1294-GSL-AZ |

OPINION AND ORDER

Timothy Robertson, a prisoner without a lawyer, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Robertson alleges he has been "exposed to" the following conditions at the Westville Correctional Facility (WCF) since his arrival there on January 29, 2025:

> contaminated water, asbestos, lead base paint, mold, high levels E.coli, fecal wast, turbidity, indane high mercury, selenium lead high doses of fluoride, cyanide beryllium all in the building structures of this facility.

ECF 1 at 3 (verbatim). On February 10, 2025, shortly after his arrival, he submitted a healthcare request for "vomiting with stomach pains." *Id*. Robertson believes this was caused by drinking "brown and yellow water with white particles" while he was in the C-1 housing block. *Id*. He was subsequently transferred, and the healthcare request was not forwarded to his new housing unit. As a result, he wasn't seen by medical until April 4, 2025. When he got there, his vitals were assessed by Nurse Barlow, and he was diagnosed with dehydration and weight loss. Robertson claims he told Nurse Barlow this was due to the lack of clean drinking water, but she didn't give him bottled water. Instead, she told him to "melt ice or purchase bottle water off commissary." *Id*. at 4.[1] On April 14, 2025, Robertson submitted another healthcare request, but the response was that he had just been seen for the same issues, so the request was denied. Robertson claims he continued to vomit, was dehydrated, and had stomach pains, but he doesn't say for how long.

On May 18, 2025, he wrote to Warden Smiley and Safety Hazard Manager John Salyer to inform them about the "water contamination, about hazardous toxic conditions with being exposed to high levels of chlorine, high levels of iron, asbestos that's coming out of ventilation lead base paint chipping off walls mold that's on the walls in rooms and showers," but he didn't receive a response from either. *Id*. Robertson

[1] A healthcare response related to the visit states, "You were seen for this issue 4-4-25 & were told you can purchase water off commissary. You can drink the melted ice water. It is filtered. You can boil the water in the microwave. Medical does not provide water." ECF 1-1 at 12. A grievance appeal response dated May 8, 2025, states, "Regarding the water concern, the Facility water is tested daily by Utility Services Inc. the results are forward[ed] to the Indiana Department of Environmental management monthly as is the annual drinking water report, which is also posted on all dorms each year." *Id.* at 7.

then filled out several healthcare requests "to have [a] colonoscopy to check for cancer," but he was not seen by medical *Id*. He was experiencing vomiting, diarrhea, stomach burning, stomach pains, headaches, body aches, memory loss, and dehydration at that time.

A year later, in May of 2026, Robertson filed several informal grievances and healthcare requests about his stomach issues. He believes his health problems are related to "water contamination." *Id*. at 5. He received a response back asking him to be patient. He states, "This facility website has been falsifying information to the public that the offender Plaintiff Timothy Robertson receives 2 to 3 clean bottle water per day, is untrue." *Id*. at 6 (verbatim). Robertson believes he is in "grave peril" because "medical has denied and delayed all request for healthcare." *Id*. at 5.

*I. Medical Claims*

Inmates are entitled to constitutionally adequate medical care for serious medical conditions. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also*

*Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-98. Put another way, inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The Eighth Amendment does not require that prisoners receive unqualified access to health care."). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267.

Accordingly, deference must be given "to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). This standard "reflects the reality that there is no single

'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) (citation and internal quotation marks omitted). Additionally, it is not enough that a medical professional be mistaken in his or her judgment. As noted above, the deliberate indifference standard requires a something "akin to criminal recklessness," *Thomas*, 2 F.4th at 722, rather than "negligence, gross negligence, or even recklessness." *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Ignoring an inmate's complaints of pain or delaying necessary treatment can amount to deliberate indifference, particularly where the delay "exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and quotation marks omitted).

With regard to non-medical prison officials, they generally don't violate the Constitution it they "reasonably relied on the judgment of medical personnel." *Eagan v. Dempsey*, 987 F.3d 667, 694 (7th Cir. 2021) (quoting *Miranda v. Cnty. of Lake*, 900 F.3d 335, 343 (7th Cir. 2018)). While prison officials are "presumptively entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care[,]" they may not ignore a prisoner's complaints entirely or refuse to act if they know the medical staff is failing to treat the prisoner. *Id.* (internal quotation marks and citations omitted). That said, "[a]n official's 'mere negligence in failing to detect and prevent subordinates' misconduct is not sufficient.'" *Id.* (quoting *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011)).

Robertson first requested medical care in February of 2025 for vomiting and stomach pain. In early April, he was evaluated by Nurse Barlow who diagnosed him with weight loss and dehydration. She advised him of alternative methods of obtaining water (*e.g.*, melting filtered ice, buying water from commissary, or boiling the available water in the microwave) if he didn't feel comfortable drinking the water from the tap. Although Robertson disagrees with her course of action, he hasn't plausibly alleged she was deliberately indifferent to his needs. She assessed his vitals and gave him several options to prevent dehydration, but the complaint appears to indicate Robertson chose not to utilize any of them. *See Walker*, 940 F.3d at 965 (deference given to treatment decisions unless there is evidence that no competent professional would have done the same); *Lockett*, 937 F.3d at 1024 (no single "proper" way to practice medicine).[2]

Robertson claims he wrote several additional healthcare requests in May of 2025 asking for a colonoscopy to "check for cancer" due to his vomiting, stomach pain, diarrhea, dehydration, and body aches, but these sparse allegations don't state a plausible claim for relief against any of the named defendants in their individual capacities. *See Walker*, 940 F.3d at 965 (inmates are not entitled to demand specific care); *see also Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) (no *general respondeat* superior

---

[2] With regard to his weight loss, he doesn't specify how much weight he lost and over what period of time it occurred. These allegations are too vague to state a plausible claim. *Taha v. Intl. Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020) ("[A] complaint must plead more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal quotations marks and citations omitted)); *Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020) ("A plaintiff must include adequate factual detail to lift his claims from mere speculative possibility to plausibility.") (citing *Ashcroft*, 556 U.S. at 678) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")).

liability under 42 U.S.C. § 1983); *Moderson v. City of Neenah*, 137 F.4th 611, 617 (7th Cir. 2025) ("A defendant cannot be held liable for a constitutional violation if she did not cause or participate in the alleged violation.") (citation omitted)); *Aguilar v. Gaston-Camara*, 861 F.3d 626, 633 (7th Cir. 2017) ("the division of labor is critical to the efficient functioning of the [prison] organization").

Robertson also claims Assistant Healthcare Services Administrator Silverio Napules violated the Constitution when he replied in response to a grievance request he would ensure that Robertson was seen by medical. A grievance appeal response attached to the complaint and written by Tricia Wozniak on April 2, 2025, states, "Per Silverio Napules, BS Assistant Health Services Administrator – There was an attempt to see him on 2/18/25 but he did not show up. I will make sure he gets seen by a nurse about this. Grievance addressed." ECF 1-1 at 6. Robertson admits he was then seen and assessed two days later by Nurse Barlow on April 4, 2025. Although Robertson disagrees with her treatment decisions as noted above, these allegations don't state a claim against Administrator Napules.

Finally, Robertson alleges he filed several informal grievances a year later in May of 2026 about his continuing nausea, diarrhea, burning stomach, headaches, and dizziness. Specifically, he requested a colonoscopy, and was told, in writing, to be patient. He says "all" medical care has been delayed and denied. While these allegations are sparse and don't provide details about his symptoms, requests, or the care/lack thereof he received in the year between his initial requests and his new ones, the court will give him the benefit of all reasonable inferences at this early stage and

allow him to proceed against the Warden in his official capacity to ensure he is being provided with constitutionally adequate medical care for the specific ongoing issues described above. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (warden of a correctional facility has both the authority and the responsibility to ensure inmates are housed in conditions that comport with the Eighth Amendment). That said, Robertson is reminded that he is not entitled to demand specific medical care, and any relief must be narrowly drawn. *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012) (Prison Litigation Reform Act mandates that "remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right.") (internal quotation marks, brackets, and citations omitted)).

*II. Conditions of Confinement*

Robertson also complains about the conditions of confinement at WCF. The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). "An official can violate the Constitution if he or she exhibits deliberate indifference to hazardous conditions that may seriously harm an inmate. *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021). Deliberate indifference encompasses both objective and subjective components:

> A prisoner challenging conditions of confinement must first show that the conditions were sufficiently serious as an objective matter, meaning that they denied the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety. Second, in covering the subjective component of the inquiry, the inmate must prove

> that prison officials acted with deliberate indifference—that they knew of and disregarded this excessive risk of harm to the inmate.

*Thomas*, 2 F.4th at 719–20 (internal quotation marks, citations, and brackets omitted). Put another way, an inmate can state a viable claim for deliberate indifference if he alleges the defendant "deliberately ignored a prison condition that presented an objectively, sufficiently serious risk of harm." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citation omitted).

With regard to the seriousness of the conditions, "[p]risons must 'provide humane conditions of confinement,' *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), but that does not mean that prisons must provide a maximally safe environment free from any minor contaminants, *Carroll v. DeTella*, 255 F.3d 470, 472–73 (7th Cir. 2001)." *Fernandez Haire v. Hepp*, No. 25-1023, 2026 WL 2445437, at *1 (7th Cir. Aug. 20, 2026). "Generally speaking, challenges to conditions of confinement cannot be aggregated and considered in combination unless 'they have a mutually enforcing effect that produces the deprivation of a single, identifiable need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets.'" *Johnson v. Prentice,* 29 F.4th 895, 904 (7th Cir. 2022) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)). Allegations of vague "overall conditions" aren't sufficient. *Id*. Regarding state of mind, "[d]eliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982

F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing). "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to state a constitutional claim. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020); *see also Stockton*, 44 F.4th at 615.

Robertson says he has been "exposed to" various conditions since his arrival at WCF in January of 2025. Other than the water issue—which will be discussed below—he doesn't plausibly explain how these alleged conditions have specifically affected him, nor does he provide any details about where, when, or how he came into contact with the alleged hazardous materials or plausibly explain how he knows conditions such as E.coli, high mercury, lead, fluoride, and cyanide beryllium are present. Robertson attaches an inspection report from June of 2025, purportedly in support of his claims, but the report doesn't indicate that any of the hazards identified in the complaint were marked as violations at WCF. *See* ECF 1-1 at 13. Robertson's own speculation about their existence is insufficient to state a plausible claim. *See, e.g., Taha v. Intl. Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020) ("[A] complaint must plead more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal quotations marks and citations omitted)); *Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020) ("A plaintiff must include adequate factual detail to lift his claims from mere speculative possibility to plausibility.") (citing *Ashcroft*, 556 U.S. at 678) ("A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")).

With regard to the allegedly contaminated water, the only detailed description Robertson provides is that the water he drank in the C-1 housing unit in February of 2025 was "brown and yellow water with white particles" floating in it.[3] He indicates that he also submitted informal grievances regarding the water in May and June of 2026, but he doesn't describe the water other than to say it was "contaminated." These allegations are insufficient to state an Eighth Amendment claim against any of the named defendants. *See Taha*, 947 F.3d at 469; *Schillinger*, 954 F.3d at 994; *see also Carroll*, 255 F.3d at 472 ("Poisoning the prison water supply or deliberately inducing cancer in a prisoner would be forms of cruel and unusual punishment . . .. But failing to provide a maximally safe environment, one completely free from pollution or safety hazards, is not."); *McNeil v. Lane*, 16 F.3d 123, 125 (7th Cir. 1993) ("Exposure to moderate levels of asbestos is a common fact of contemporary life and cannot, under contemporary standards, be considered cruel and unusual."); *Stapleton v. Carr*, 438 F. Supp. 3d 925, 941–42 (W.D. Wis. 2020) (finding plaintiff provided insufficient details about the discolored and particle-laden water to conclude it was "egregiously objectionable") (quoting *Yellen v. Olivarez*, 668 F. App'x 762, 763 (9th Cir. 2016) (prisoner's claim regarding cloudy, iron-and manganese-rich water failed because the Constitution doesn't require water be "tasty or aesthetically pleasing")).

---

[3] He has since been moved out of that housing unit.

Robertson claims WCF is "falsifying information" on its website by stating that he is being provided with daily bottled water. However, the court has reviewed the publicly available website and has found no such assertions on it regarding Robertson's water allocation. Moreover, even if such declarations had been made on the website, that doesn't state a viable Eighth Amendment claim or show that any of the named defendants were aware Roberton's rights were being violated and purposefully failed to act. *See, e.g., Thomas*, 2 F.4th at 719–20 He further alleges the staff at WCF were given notice of the dangers of consuming the water at the prison, but he doesn't explain what the notice said, who issued it, or when that allegedly occurred. *See Carroll*, 255 F.3d at 472–73 (even when prison gave free bottled water to its staff that didn't "show an awareness of a substantial hazard" on the part of the employer). Accordingly, Robertson's allegations fail to state a claim. *See Taha*, 947 F.3d at 469; *Schillinger*, 954 F.3d at 994; *see also Moderson v. City of Neenah*, 137 F.4th 611, 617 (7th Cir. 2025) ("A defendant cannot be held liable for a constitutional violation if she did not cause or participate in the alleged violation.") (citation omitted)); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible."); *see also Aguilar v. Gaston-Camara*, 861 F.3d 626, 633 (7th Cir. 2017) ("[T]he division of labor is critical to the efficient functioning of the [prison] organization."); *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) (There is no general respondeat superior liability under 42 U.S.C. § 1983.).

*III. Preliminary Injunction*

As a final matter, Robertson has filed a separate motion for preliminary injunction. A preliminary injunction is a "very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (quoting *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020)). To obtain a preliminary injunction, a movant "must make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Tully v. Okeson*, 977 F.3d 608, 612-13 (7th Cir. 2020) (quoting *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As to the merits, "the applicant need not show that it definitely will win the case." *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id*. at 763 (quotation marks omitted). In assessing the merits, the court need not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the merits must be assessed as "they are likely to be decided after more complete discovery and litigation." *Id.* at 792.[4] With regard to irreparable harm,

[4] The Seventh Circuit has recognized this step is "often decisive," and a court need not analyze the remaining elements when that is the case. *Univ. of S. Ind.*, 43 F.4th at 791.

"[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. If the movant meets all the threshold requirements, the court may then "consider the balance of harms between the parties and the effect of granting or denying a preliminary injunction on the public interest." *Tully,* 977 F.3d at 613 (quotation marks omitted).

"Mandatory preliminary injunctions" requiring the defendant to take affirmative acts are viewed with particular caution and are "sparingly issued[.]" *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted). Additionally, in the prison context, the court's ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and internal quotation marks omitted).

As outlined above, Robertson is being granted leave to proceed on a single injunctive relief claim to ensure he is being provided with constitutionally adequate medical care for his nausea, diarrhea, burning stomach, headaches, and dizziness. His "Motion for Imminent Danger of Serious Physical Injury" alleges his "exposure" to water with high levels of chlorine and iron has caused those issues.[5] ECF 3 at 1. Even

---

[5] Iron and manganese are naturally occurring elements that can cause water to become discolored and/or cloudy. There are "secondary standards" in place for drinking water, but the requirements are

setting aside the speculative nature of those claims regarding causation, Robertson hasn't demonstrated a reasonable likelihood of success on the merits. Similar to his complaint, Robertson's motion states he began experiencing the symptoms in early 2025. He requested medical attention and was assessed by Nurse Barlow. He didn't agree with her course of action or explanation regarding the water, so he alleges he alerted the Warden and Safety Hazard Manager Salyer of the issues in May of 2025. He doesn't provide details about his symptoms or the care he requested and/or received between then and now.[6] He doesn't allege the symptoms have worsened or that he is currently experiencing a non-speculative medical emergency. Although the court has construed his complaint generously and allowed Robertson to proceed on a claim for permanent injunctive relief, his sparse allegations don't provide a sufficient basis to grant him preliminary injunctive relief at this stage. *See, e.g., Halczenko v. Ascension Health, Inc.*, 37 F.4th 1321, 1325 (7th Cir. 2022) (alleged harm cannot be speculative); *Univ. of S. Ind.*, 43 F.4th at 791 (when assessing a motion for preliminary injunctive relief, the court need not "accept [the plaintiff's] allegations as true" or "give him the

---

generally non-enforceable and exist "to guide water systems to minimize problems with taste, color, and odor" rather than for health hazard purposes. *Water Quality in Indiana: Boil Water Advisories (BWA) & Discolored Water Events* available online at: https://www.in.gov/idem/cleanwater/drinking-water/boil-water-advisories-bwa-and-discolored-water-events (last visited Sept. 14, 2026); *see also Carroll*, 255 F.3d at 472 ("Many Americans live under conditions of exposure to various contaminants. The Eighth Amendment does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans."). While chlorine in drinking water is subject to the primary standards established by the EPA, *see National Primary Drinking Water Regulations*, available online at: https://www.epa.gov/ground-water-and-drinking-water/national-primary-drinking-water-regulations (last visited Sept. 15, 2026), Robertson hasn't provided any non-conclusory and non-speculative details about the current water at WCF to suggest it exceeds the primary standards for chlorine.

[6] In his complaint, he mentions that he submitted two informal grievances in the spring of 2026, but that fact isn't reiterated in his motion. Regardless, he provides no additional details about what has occurred over the past year.

benefit of all reasonable inferences in his favor"); *Pritzker*, 973 F.3d at 762 ("mere possibility of success [on the merits] is not enough").[7]

For these reasons, the court:

(1) GRANTS Timothy Robertson leave to proceed against Warden J. Smiley in his official capacity on a permanent injunctive relief claim to ensure Robertson is being provided with constitutionally adequate medical care for his nausea, diarrhea, burning stomach, headaches, and dizziness to comport with the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Safety Hazard Manager John Salyer, Assistant Healthcare Administrator Silverio Napules, and Nurse Barlow;

(4) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Warden J. Smiley at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1);

(5) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Warden J. Smiley at Centurion Health of Indiana, LLC, with a copy of this order and the complaint (ECF 1); and

---

[7] Robertson's motion also provides a litany of additional symptoms he believes are being caused by "toxic substances" such as asbestos, lead, mold. ECF 3 at 2. He claims the "exposure" will cause "long term health problems" such as cancer, pancreas issues, and liver damage. *Id*. The conclusory and speculative nature of these allegations coupled with the fact that his complaint doesn't state a plausible Eighth Amendment claim with regard to the conditions of confinement makes granting preliminary injunctive relief unsuitable at this time. *Halczenko*, 37 F.4th at 1325; *Univ. of S. Ind.*, 43 F.4th at 791.

(7) ORDERS, under 42 U.S.C. § 1997e(g)(2), Warden J. Smiley to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on September 18, 2026

/s/Gretchen S. Lund
JUDGE
UNITED STATES DISTRICT COURT